| | |
|---|---|
| **OFFIT KURMAN, P.A.** <br> Jason A. Nagi, Esq. <br> 590 Madison Avenue, 6th Floor <br> New York, NY 10022 <br> Tel (212) 545-1900 <br> Email: Jason.nagi@offitkurman.com <br>         -and- <br> Joyce Kuhns, Esq. (*pro hac vice* admission to be submitted) <br> 300 E. Lombard Street, <br> Baltimore, MD 21202 <br> Phone: 410.209.6400 | **Hearing Date:** _____, 2023, 10:00 AM <br> **Response Date:** _____, 2023 |

*Proposed Attorneys to the Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> WICKAPOGUE 1 LLC, <br><br>                                       Debtor | Chapter 11 <br> `Case No.: 2:23-cv-00561` <br> Case No. 8-23-71048-reg |

## MOTION TO ISSUE A WRIT OF ASSISTANCE
## FOR THE U.S. MARSHAL TO ASSIST IN THE REMOVAL
## OF NICOLE GALLAGHER AND MARK GALLAGHER AND ANY OTHER
## <u>OCCUPANTS OF 145 WICKAPOGUE RD., SOUTHAMPTON NY 11968</u>

Debtor Wickapogue 1, LLC ("**Debtor**"), by its counsel, Offit Kurman, P.A., files this Motion and respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Debtor appeals to this Court for an emergency Writ of Assistance to gain control of property of the estate from Debtor's former equity holder, Nicole Gallagher, and her husband, Mark Gallagher (collectively the "**Gallaghers**")—improved real property consisting of a 10,000 square foot residence located at 145 Wickapogue Road, Southampton, NY (the "**Premises**") — which is Debtor's sole asset.

2.      Prior to, and after filing the Petition (defined below), Debtor advised Nicole Gallagher and Mark Gallagher to remove all of their personal items from the Premises to no avail.

In Debtor's post-petition letter, Debtor demanded Nicole and Mark Gallagher to turn over all keys, codes, access to cameras for the Premises, and insurance policies and other books and records for the Debtor.

3. Among other things, these items are required in order for Debtor to obtain insurance for the Premises, as no insurance company will provide a policy for an unoccupied property unless cameras are installed and connected to wifi, and the Debtor has control of the Premises.

4. As a result, and having heard nothing from the Gallaghers or their counsel, on March 31, 2023, Debtor appeared at the Premises with a locksmith, to change the locks at the Premises.

5. Mr. Gallagher then contacted the Town of Southampton Police Department, advising that a locksmith was at "his" property, prompting the police to arrive at the Premises.

6. After discussion with counsel and the Debtor, the locks were peaceably changed, however, an individual named Mike Mangiaracina, an agent of Mark Gallagher appeared and advised the police that he was living at the Premises and paying the utility bills.

7. As a result, the police, who had directed Debtor to remain a safe distance away in the car, left the Premises with Mr. Mangiaracina.

8. The next day, the Debtor appeared at the Premises and all locks had been changed.

9. As a result, Debtor seeks an emergency application for a Writ of Assistance authorizing the removal of all persons and personal property from the Premises.

**PROCEDURAL HISTORY**

10. On March 28, 2023 (the "**Petition Date**"), the Debtor filed a petition (the "**Petition**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its businesses and manage its property as debtor

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

11. The 341 Meeting of Creditors is currently scheduled for May 5, 2023.

12. Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 cases is set forth in the Declaration of David Goldwasser, Chief Restructuring Officer of Wickapogue 1 LLC Under Local Bankruptcy Rule 1007-4 (the "**Goldwasser Declaration**") [Dkt# 2-2], which was filed with the Court on March 28, 2023.

## FACTS

### A. The Collateral and Its Ownership

13. Debtor owns the improved real property consisting of a 10,000 square foot residence located at 145 Wickapogue Road, Southampton, NY (the "**Premises**").

14. Debtor acquired its title to, and an interest in, the Premises on or about September 25, 2017, as an investment property.

15. Debtor is wholly owned by Wickapogue Beach, LLC, which acquired its membership interest in Debtor at a public auction conducted pursuant to the New York Uniform Commercial Code the ("**UCC**").

### B. The Secured Loan

16. In connection with its acquisition of the Premises, Debtor entered into a loan transaction whereby it received monies to purchase the Premises, in exchange for which it gave a mortgage on the Premises to 5 Arch Funding Corp. ("**Original Lender**").

17. On or about February 7, 2020, Debtor further encumbered the Premises by entering into a new loan in the aggregate original principal amount of five million seven hundred fifty thousand and 00/100 dollars ($5,750,000.00) (the "**Loan**"), which was comprised of: (i) a loan in

3

the original principal amount of $3,250,000.00, and (ii) a building loan in the original principal amount of up to $2,500,000.00.

18. The Loan was assigned to the current secured lender, Blue Castle (Cayman) Ltd. Blue Castle (Cayman) Ltd. ("**Secured Lender**").

19. At the time of entering into the Loan, Nicole Gallagher—who was the sole member of Debtor—and Mark Gallagher (collectively, the "**Gallaghers**") each executed a Guaranty dated February 7, 2020, unconditionally guaranteeing the prompt payment and performance, when due, of all indebtedness or other obligations of the Debtor due under the Loan and other loan documents.

20. As a result, Mark Gallagher has never held an interest in Debtor, and is merely a co-guarantor on the Loan, although as further set forth below, Mr. Gallagher continues to exercise dominion and control of the Premises.

21. Debtor and Nicole Gallagher also executed that certain Pledge Agreement, dated February 7, 2020 (the "**Pledge**"), pledging Nicole Gallagher's membership interests in Debtor to the lender.

22. In addition, Nicole Gallagher executed an Affidavit Concerning Business Purpose and Non-Owner Occupancy (the "**Affidavit**"). A true and correct copy of the Affidavit is annexed hereto as **Exhibit A**.

23. In the Affidavit, Ms. Gallagher, on behalf of Debtor, swore under oath that the representations and warranties made in the Affidavit were made with the intention that they should be relied upon by Original Lender or its assignee. (*Id*. at ¶¶1, 3, 4, 9).

24. The Affidavit further states:

> 3. … Borrower intends to use the Loan proceeds for business purposes, including but not limited to the following: *refinance of a fix and flip investment property*.
>
> 4. Borrower hereby certifies that *all of the proceeds of the Loan will be used for business and commercial purposes. None on the*

4

> *Loan proceeds will be used for personal, family, or household purposes.* Borrower further acknowledges that Lender would not make the Loan if Borrower intended to use any Loan proceeds for personal, family, or household purposes. Borrower acknowledges that Lender is relying on the Affidavit in the making of the Loan.
>
> …
>
> 6. Borrower hereby certifies that:
>
> a. The *property is not Borrower's residence.*
>
> b. *Borrower has, and each of Borrower's principals have, no intention of ever occupying or making the Property the residence of Borrower or any of the Borrower's principals' residence. If Borrower's situation changes in the future, Borrower, or any of its principals, agrees that under no circumstances will Borrower, or any of its principals, occupy the Property in whole, or in part.*
>
> …
>
> 8. Borrower has at all times orally confirmed to Lender that Borrower is acquiring the Loan for business purposes only, and the Borrower shall not at any time use any Loan proceeds for personal, family or household purposes. Borrower has never made any conflicting oral statement to Lender."

(*Id.*) (emphasis added).

### C. Defaults

25. Debtor, while still under the control of Nicole Gallagher, defaulted on the Loan by, among other things, failing to pay the Loan in full upon the Loan's October 1, 2021, in addition to, (i) allowing multiple confessions of judgments, totaling over $8,008,156.69, to be entered against Debtor which were not discharged or bonded within 30 days of entry and which continue to exist against Debtor; (ii) allowing the placement of additional mortgage liens against the Premises without the lender's consent; and (iii) misrepresentation by the Gallaghers in the Guaranty that they had paid all taxes that had come due as of the date of the Guaranty.

26. By virtue of the Events of Default that occurred under the loan documents, Blue Castle commenced a foreclosure proceedings against Debtor, the Gallaghers, and other parties,

which action was commenced in the United States District Court, Eastern District of New York under Case Number 2:22-cv-05488-GRB-LGD, captioned *Blue Castle (Cayman) Ltd. v. Wickapouge 1 LLC, et. al.* (the "**Foreclosure Action**").

27. During the pendency of the Foreclosure Action, in which the Gallaghers have defaulted in answering a Receiver was appointed; however, the Receiver never took control of the Premises.

D. **The UCC Notice of Sale and Litigation**

28. Blue Castle served a Notice of Disposition of Collateral pursuant to the UCC for the disposition of Nicole Gallagher's membership interests in Debtor, as permitted by the Pledge, which notice was sent by counsel on November 8, 2022 and delivered on November 10, 2022.

29. The Notice of Disposition of Collateral scheduled the UCC sale for January 12, 2023.

30. The Gallaghers delayed the UCC sale by the filing of a Summons and Complaint and Order to Show Cause in the Supreme Court, Suffolk County under Index Number 600746/2023, captioned *Wickapogue 1 LLC, Nicole Gallagher and Mark Gallagher v. Blue Castle (Cayman) Ltd..* (the "**UCC Action**").

31. On January 25, 2023, the UCC Action was removed by Blue Castle to the United States District Court, Eastern District of New York under Case Number 2:23-cv-00561-HG.

32. After considering the pleadings, submissions by the parties, and oral argument held on February 9, 2023, the Court in the UCC Action denied the request for injunctive relief.

33. Among other things, the District Court found that the UCC sale was commercially reasonable *as a matter of law:*

> *A review of the record reveals that Defendant's sale of the Collateral is commercially reasonable as a matter of law.* The January 12, 2023, UCC Sale date was set on November 8, 2022, and information about the sale was sent by Rosewood—the broker hired

6

> by Defendant for the purpose of marketing and conducting the UCC Sale—to 39,000 investors and over 9,700 bankruptcy and real estate attorneys. Information about the sale was also published in newspapers including the New York Metro Edition of the Wall Street Journal, Newsday, the Real Estate Alert and Dan's Paper on various dates between November 11, 2022, and January 6, 2023. Defendant further alleges that it notified Plaintiff Wickapogue of the sale of its collateral on November 10, 2022, more than 60 days before the UCC Sale was to occur. *This is not only objectively reasonable, but also statutorily reasonable. See* UCC § 9-612(b) ("[A] notification of disposition sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition."); *see also Orix Credit All., Inc. v. Blevins*, No. 90-cv-5759, 1993 WL 177940, at *2 (S.D.N.Y. May 17, 1993) (finding that a sale, advertised twice in a newspaper, which includes a notice describing the day, time, place, and collateral being sold, and for which the borrower received proper notice, was commercially reasonable as a matter of law); *DeRosa v. Chase Manhattan Mortg. Corp.*, 782 N.Y.S.2d 5, 10 (N.Y. App. Div. 2004) (finding that the totality of the record suggests that the UCC sale was conducted in a commercially reasonable manner).
>
> Furthermore, the Court does not find requirements that bidders register two days before the sale date and submit 10% of their maximum bid prior to the UCC Sale to be commercially unreasonable. Such requirements incentivize bidders with legitimate interests to participate, and can be used as a method to diligence the *bona fides* of potential bidders.

(A copy of the decision is attached hereto as **Exhibit B**.) (emphasis added; citations to record omitted).

34. By letter dated February 16, 2023, Blue Castle advised Nicole Gallagher that she no longer had authority to exercise voting rights with respect to her membership interest in Wickapogue 1 LLC, as a result of her defaults under the Pledge and Guaranty. (A copy of the referenced letter is attached hereto as **Exhibit C**.)

### E. Transfer of Control of Debtor

35. A duly conducted UCC sale was held on February 17, 2023, at which time Blue Castle placed a credit bid for Nicole Gallagher's 100% membership interests in Debtor and became the successful bidder. Blue Castle promptly thereafter assigned its rights in the credit bid to Wickapogue Beach LLC, which thereafter became the 100% holder of all membership interests in Debtor.

### F. The Gallagher's Continue to Exercise Dominion and Control of the Premises

36. Notwithstanding Wickapogue Beach LLCs acquisition of the membership interests in the Debtor, the Gallagher's have continued to exercise dominion and control over the Premises, in which they have no ownership interest and are in possession or have given possession to others without Debtor's authority.

37. On March 3, 2023, demand was given to the Gallaghers to vacate the Premises on or before March 8, 2023. (A copy of the March 3rd letter is attached hereto as **Exhibit D**.)

38. Debtor thereafter filed the Petition to facilitate the sale of the Premises, free and clear of liens, claims and encumbrances, pursuant to a plan of liquidation and to distribute net sale proceeds to creditors in the order of priority of their respective claims.

### G. Notice of the Petition and Turnover Demand to the Gallaghers

39. By letter dated March 29, 2023 (the "**March 29th Letter**"), counsel for Debtor advised the Gallagher's of the filing of the Petition and that the Gallaghers must cease exercising control of the Premises. (A copy of the March 3rd letter is attached hereto as **Exhibit E**.) The Gallaghers were notified that such actions were violations of the automatic stay (as well as Debtor's prior March 3rd demand to remove their personal belonging from the Premises). Demand was also made to remove all personal belongings, turn over all keys, security or camera access

codes, business records, insurance policies, or other business information with respect to the Debtor.

### H. The Gallagher's Continue to Exercise Dominion and Control of the Debtor's Property and to Interfere with Property of the Estate

I.   On March 31, 2023, Debtor's agent, Gregory Parks appeared at the Premises with a locksmith and notified the Town of Southampton Police Department that he was acting as agent for the Debtor, which controls the Premises . (Declaration of Gregory Parks, dated April 5, 2023 (the "**Parks Decl.**") Ex. 1 thereto (Letter to Town of Southampton Police Department, dated March 31, 2023); ¶ 3).

J.   The March 31st letter advised of the filing of the Bankruptcy Case and that the Premises was property of the estate.

K.   While in the process of changing the locks, Mark Gallagher contacted the Town of Southampton Police Department and asserted that he was the owner of the Premises. (*Id.* at ¶ 4.)

L.   In addition, a neighbor appeared and advised that a smell of gas was coming from the Premises. As a result, National Grid appeared to investigate and Gregory Parks provided National Grid with access to the Premises while the locks were being changed by the locksmith. (*Id.* at ¶ 5.)

M.   In the process of the foregoing, an individual named Mike Mangiarcina, a real estate broker who had previously listed the Premises for sale, appeared at the Premises and began acting in an erratic fashion. (*Id.* at ¶ 6.)

N.   The Southampton Police Department recommended that Mr. Parks remain away from the Premises to avoid an altercation and he obliged, remaining in his car on the street, two driveways to the west from the Premises. (*Id.* at ¶ 7.)

O. Mr. Mangiarcina indicated that he was called to the Premises by Mark Gallagher and represented to the Southampton Police Department that he was the lessee and that he pays the utility and cable bills. (*Id.* at ¶ 8.)

P. Mr. Mangiarcina's publicly available LinkedIn profile also lists him as "Chief Operating Officer at Gallagher Capital Inc. & Gallagher Holdings Inc." (A copy of the Mr. Mangiarcina's LinkedIn profile is attached hereto as **Exhibit F**.)

Q. As a result, the Southampton Police Department allowed Mr. Mangiarcina to remain in the Premises with National Grid.

R. Thereafter, the Southampton Police Department discussed the above with Mr. Parks, and left the Premises under the control of Mr. Mangiarcina and National Grid.

S. During this time, the locksmith completed changing the locks and turned over the keys to Mr. Parks and he left the Premises.

T. The next day, on April 1, 2023, Mr. Parks returned to the Premises and discovered that none of the keys worked because the locks were changed by the Gallaghers or their agents.

U. The Premises is currently, and at all relevant times was, solely owned by Debtor.

V. Debtor's ability to sell the Premises has been hindered by the Gallaghers and others acting under them.

**W. Debtor Needs Control of the Premises and Access to Cameras to Obtain Insurance**

X. Debtor cannot obtain insurance for the Premises without dominion and control of the Premises and without access to a camera system.

Y. Additionally, the Gallaghers and their agents continue to devalue the Premises and to cause confusion among potential buyers by representing themselves to have ownership and control of the Premises.

Z.     Debtor cannot acquire access to the Premises despite changing the locks, visiting the Premises and communicating to the Gallaghers that Debtor is the owner of the Premises and the Gallaghers have no authority be present at the Premises or otherwise control the Premises.

AA.    Debtor cannot administer the Premises or the estate unless the Gallaghers, and any other individuals in the Premises are removed.

BB.    The actions of the Gallaghers violate the automatic stay in this case since they are exercising control over the Premises, which is property of the estate.

CC.    The actions of the Gallaghers have hindered, delayed and impeded Debtor's ability to administer this Estate.

DD.    Debtor requests an expedited review of this matter due to its importance for Debtor to promptly administer the estate.

## ARGUMENT

EE.    Debtor seeks a Writ of Assistance from this Court to direct the U.S. Marshals to oversee Debtor's efforts to remove the Gallaghers and Occupants and personal property from the Premises.

FF.    Pursuant to 11 U.S.C. § 362, the filing of the Petition protects the Debtor and its estate from interference with property of the estate.

> The filing of a bankruptcy petition operates as an automatic stay of a wide range of actions against a debtor and/or the debtor's property. The stay is "applicable to all entities," and it is "intended to protect the debtor and property of the estate." The automatic stay affords protections to debtors, parties in interest, and creditors.

*In re Joe's Friendly Serv. & Son, Inc.*, No. 8-14-70001-REG, 2019 WL 1313519, at *9 (Bankr. E.D.N.Y. Mar. 21, 2019), *aff'd in part, appeal dismissed in part sub nom. In re Joe's Friendly Serv. & Son Inc.*, No. 14-BK-70001(REG), 2019 WL 6310207 (E.D.N.Y. Nov. 25, 2019); *In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) ("When a bankruptcy petition is filed 'all

legal or equitable interests of the debtor in property,' 'wherever located and by whomever held,' become property of the estate.") .

        GG.    As the court found in *In re Salov*, 510 B.R. 720 (Bankr. S.D.N.Y. 2014):

> The filing of a bankruptcy petition invokes the powerful protection of the automatic stay under 11 U.S.C. § 362. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy code.". It is effective immediately upon the filing of a bankruptcy petition without further action. The filing also creates an estate consisting of "all legal or equitable interests of the debtor in property" at the time of filing as well as other property that may be recaptured during the bankruptcy. The scope of the stay is broad, encompassing "almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate."

*Id.* at 726.

        HH.    The Premises is Debtor's sole asset, and is indisputably property of the estate. In cases where non-debtor parties interfere with property of the estate—even where those parties reside in the property of the estate—Courts will issue a writ of assistance to remove those parties from dominion and control. For example, in *In re Byrd*, No. 04-35620-TJC, 2011 WL 589907 (Bankr. D. Md. Feb. 10, 2011), *aff'd sub nom. Byrd v. Johnson*, 467 B.R. 832 (D. Md. 2012), *aff'd sub nom. In re Byrd*, 484 F. App'x 845 (4th Cir. 2012), the Bankruptcy Court granted a writ of assistance to remove the debtors from their residence because debtors had refused to cooperate with the trustee and continued to exercise dominion and control over the property. The *Byrd* Court found that "Debtors refused to grant the Trustee access to their residence, resulting in the issuance of a writ of assistance to the United States Marshall to assist the Trustee in gaining access to the Debtors' residence." *Id.,* 2011 WL 589907, at *2   In addition, the *Byrd* Court issued a "Memorandum of Decision Granting the Motion of Chapter 7 Trustee to Authorize the Removal of Persons and Property" in connection with the sale of the property.

        II.    Here, Debtor must affirmatively act to gain access to the Premises in order to obtain insurance and sell the Premises for the benefit of the estate's creditors. In order to do that, the

Debtor needs complete dominion and control of the Premises, to obtain all keys to the Premises, security or camera access codes, business records, insurance policies and other business information with respect to the Debtor.

JJ.   As a result, Debtor seeks the assistance of the U.S. Marshals, to remove any persons remaining in the Premises and to change the locks of the Premises.

KK.   Debtor reserves it right to seek sanction against the Gallaghers for the expense of this relief as damages for wilfully and intentionally violating the automatic stay, in addition to any fees assessed by the U.S. Marshals.

WHEREFORE, Debtor Wickapogue 1, LLC respectfully requests the entry of an Order:

(a) Granting a writ of assistance for the U.S. Marshal to assist in the removal of the Occupants from the Premises, including all personal belongings; and

(b) That the Writ of Assistance be issued to the U.S. Marshal to:

  i. Place the Debtor in sole, complete and exclusive possession of 145 Wickapogue Road, Southampton, NY—the Premises—on any date selected by Debtor, with the U.S. Marshal having the authority to remove all persons and/or occupants within the Premises using reasonable force, if necessary. The U.S. Marshal shall be available to assist Debtor its agents to change all locks and security systems and to provide such other assistance that is reasonably necessary so that Debtor, and those acting lawfully under it, shall be the only entity or persons having lawful access to the Premises;

  ii. Provide immediate and ongoing support to Debtor in gaining immediate and ongoing access to the Premises at such times as Debtor may find appropriate;

  iii. Provide support to Debtor and continue such support as requested by Debtor until further order of this Court;

      iv.      Providing that the Gallaghers and any occupants shall pay the normal fees of the U.S. Marshal and the costs and expenses of Debtor to enforce this Order (including, without limitation, the cost of removing the Gallaghers, the Occupants and personal property from the Premises); and

(c) Barring and restraining the Gallaghers from setting foot on the Premises; and

(d) Directing the Gallaghers to turn over all keys to the Premises, security or camera access codes, business records, insurance policies and other business information with respect to the Debtor;

(e) Deeming all personalty remaining on the Premises abandoned to the estate; and

(f) Granting such other and further relief as this Court may deem just and proper.

**OFFIT KURMAN, P.A.**

/s/ Jason A. Nagi
Jason A. Nagi
590 Madison Ave Floor 6
New York, New York 10022
Phone: 212-545-1900
Jason.Nagi@OffitKurman.com
*Counsel for Wickapogue 1, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 5TH day of April, 2023, a copy of the foregoing was sent via regular U.S. Postal Mail to:

Bernard Elfassy
33 West Hawthorne Ave, Ste 200
Valley Stream, NY 11580

Nicole Gallagher
11 Martha Place
Port Jefferson Station, NY 11776

Swezey Fuel Co.,Inc.
Nicholas J. Damadeo
27 West Neck Road
Huntington, NY 11743

Blue Castle (Cayman) Ltd.
1688 Meridian Ave, 7th Floor
Miami Beach, Fl 33139

NYS Dept. of Taxation and Finance
Bankruptcy Unit – TCD
Building 8, Room 455
W.A. Harriman State Campus
Albany, NY 12227

Title, LLC and St. Andrews Capital, LLC
c/o Robert M. Bursky
68 South Service Rd, Ste 100
Melville, NJ 11747

Bryan Geffen c/o Lawrence Spivak
160-01 Hillside Avenue
Jamaica, NY 11432

Office of Suffolk County Comptroller
John M. Kennedy, Jr.
330 Center Drive
Riverhead, NY 11901-33011

Town of Southampton
Town & School Tax Collector
116 Hampton Road
Southampton, NY 11968

David Goldwasser
3286 N 29th Court
Hollywood, FL 33020
Office of the U.S. Trustee

Alfonse D'Amato Federal Courthouse
560 Federal Plaza
Central Islip, NY 11722-4456

United States Attorney's Office
Attn: Long Island Bankruptcy Processing
610 Federal Plaza, 5th Floor
Central Islip, NY 11722-4454

George M. Gavalas
2001 Marcus Avenue - Suite N125
Lake Success, NY 11042

Offit Kurman, P.A.
Attn: Jason A. Nagi & Albena Petrakov
560 Madison Ave, 6th Floor
New York, NY 10022

Village of Southampton
Village Tax Collector
23 Main Street
Southampton, NY 11968

Internal Revenue Service
c/o US Attorney Claims Unit
One Saint Andrews Plaza, Rm 417
New York, NY 10007

Offit Kurman, P.A.
Attn: Joyce A. Kuhns
300 E. Lombard Street, Suite 2010
Baltimore, MD 21202

Water Worx Pools & Spas LLC
164 McKinley Drive
Mastic Beach, NY 11951

Lawrence Spivak
160-01 Hillside Avenue
Jamaica, NY 11432

Peter S. Gordon
108-18 Queens Blvd, 6th Fl
Forest Hills, NY 11375

Lisa Grossman
c/o Bernard Elfassy
33 West Hawthorne Ave, Ste 200
Valley Stream, NY 11580

PSGE Long Island
P.O. Box 888
Hicksville, NY 11802

Mark Gallagher
11 Martha Place
Port Jefferson Station, NY 11776

Robert M. Bursky
68 South Service Rd, Ste 100
Melville, NJ 11747

Nicholas J. Damadeo
27 West Neck Road
Huntington, NY 11743

State of New York
Attorney General's Office
120 Broadway
New York, NY 10271

　　　　　　　　　　　　　　　　　　　　　　　*/s/* Jason A. Nagi

4892-5613-0651